CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
APR 26 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TERESA D. SHENK, | ) CASE NO. 5:11CV00068 |
| Plaintiff, | ) |
| v. | ) REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) By: B. Waugh Crigler |
| Defendant. | ) U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's April 16, 2009 protectively-filed application for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated December 15, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since June 12, 2008, her alleged date of disability onset.[1] (R. 15.) The Law Judge determined plaintiff's obesity, fibromyalgia, and affective disorder were severe impairments. (R. 16.) He also concluded that,

---

[1] In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is March 31, 2013. *See* 20 C.F.R. § 404.131(a).

1

through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 16-18.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform simple, routine, light work.[2] (R. 18.)

The Law Judge relied on portions of the testimony of Robert W. Jackson, a vocational expert ("VE"), provided in response to questions premised on the Law Judge's RFC finding. (R. 13, 27, 66-73.) Based on this testimony, the Law Judge determined that plaintiff's RFC did prevent her from performing her past relevant work, but that a significant number of other representative jobs existed in the national economy that could be performed by a person with plaintiff's RFC. (R. 26-27.) Accordingly, the Law Judge found plaintiff was not disabled under the Act. *Id.*

Plaintiff appealed the Law Judge's December 15, 2010 decision to the Appeals Council. (R. 1-3, 9.) In its June 13, 2011 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence,

---

[2] *See* 20 C.F.R. § 404.1567(b).

the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In a brief supporting her motion for summary judgment, plaintiff asserts that the Law Judge's RFC finding was erroneous and was not supported by substantial evidence. Specifically, she argues that the Law Judge's finding that the opinion of her treating psychiatrist Philip T. Halapin, M.D., was entitled to no weight was neither supported by substantial evidence nor reached in manner consistent with the regulations. (Dkt. No. 11, at 7-8.) Plaintiff believes the Law Judge attempted to "play doctor or impose his own beliefs on how Dr. Halapin should have treated" the plaintiff and ignored the treating source's longitudinal view of plaintiff's care. *Id.* at 8. She further argues that by justifying his finding that Halapin's evidence was not credible because of inconsistencies, the Law Judge was effectively imposing a rationale requiring that each report show the "same thing" in order to be credible. *Id.* at 8-9. Plaintiff argues that any inconsistencies in the reports of record actually demonstrate objectivity on the part of this treating source and reflect a decline in her condition. *Id.* at 8-9. She also contends that the regulations do not suggest that it was appropriate for the Law Judge to have discounted Halapin's opinion because it failed to utilize GAF scores. *Id.* at 9.

3

Plaintiff also takes issue with the Law Judge's rejection of Halapin's opinion because of Halapin's reliance on plaintiff's history and symptoms as a basis for his medical opinions concerning the degree and effects of her maladies. *Id* at 9. She believes the Law judge ignored a well-accepted general principle that psychiatrists often rely on reported symptoms and limitations in treating their patients because mental impairments often lack objective clinical findings. Thus, plaintiff claims the Law Judge inappropriately evaluated the evidence relating to the nature of her depression and the effect of her medications. *Id.* Plaintiff also believes the Law Judge improperly drew the conclusion that plaintiff taking care of her special needs children constituted work like activity. *Id.* at 10. She contends that Dr. Halapin's opinion was supported by clinical diagnostic techniques, was not inconsistent with the other substantial evidence of record, and was based on a long term, longitudinal treatment relationship, therefore, entitling it to great weight. *Id.* at 11.

Second, plaintiff argues that the Law Judge's decision to reject plaintiff's testimony about her physical abilities in reaching his RFC finding is not supported by substantial evidence and is based on an improper application of the legal standards. She offers that the medical findings were consistent with the Commissioner's policy for evaluating claims based on fibromyalgia, and that the Law Judge's focus on whether she was neurologically intact was irrelevant to that diagnosis. (Dkt. No. 11, at 11-12.) She again offers that the Law Judge should not have substituted his own notions of medical treatment for the decisions made by a medical professional on the course plaintiff's treatment for fibromyalgia was to take. *Id.* at 12-13.

Finally, plaintiff contends that the Law Judge failed to account for plaintiff's obesity in determining her RFC, despite finding her obesity to be a severe impairment. She asserts that the Law Judge failed to discuss the combined effects of her obesity on her other impairments when

4

assessing her ability to sit, stand, walk, or lift, and in the assessment of the degree of pain she suffers beyond that expected from fibromyalgia alone. *Id.* at 13. Plaintiff believes that the analysis was legally insufficient, as a result of which she seeks judgment in her favor.

In a brief in support of his motion for summary judgment, the Commissioner argues that there is substantial evidence supporting the Law Judge's RFC finding. First, he asserts that Dr. Halapin's opinion was not supported by the record. (Dkt. No. 17, at 9.) He offers that plaintiff was treated conservatively, primarily with medication management and, notably, without counseling. *Id.* He contends that plaintiff would have received more aggressive care had her condition been as extreme as Dr. Halapin portrayed. *Id.* The Commissioner also points out that Halapin's treatment notes reflect that plaintiff's condition largely was situational, improving with medication. *Id.* at 9-10. He also dismisses plaintiff's arguments that the Law Judge was "playing doctor." *Id.* at 10. He points out that it is the Law Judge's duty to weigh evidence and determine a claimant's residual functional capacity. Because Halapin's opinion was not supported by medically acceptable clinical techniques and was inconsistent with the record, the Commissioner argues that the Law Judge committed no err in rejecting it and, instead, accepting the opinions of the state agency consultants. *Id.* at 10-11.

The Commissioner further claims that the record does not support plaintiff's argument that she is physically incapable of performing light or sedentary work. (Dkt. No. 17, at 11.) He asserts that her fibromyalgia has been treated conservatively, physical activity has been encouraged, and she has required no follow up treatment for her nephrectomy. *Id.* Further, he points out that no physician has opined that plaintiff was disabled due to her physical impairments, and that the two state agency physicians opined that she had the physical RFC to perform light work. *Id.* at 11-12. Additionally, the Commissioner offers that plaintiff's activities

5

in caring for her special needs children, household tasks, and volunteer work belie her claims and demonstrate her ability to perform work-related activities within the categories consistent with her RFC. *Id.* at 12.

Following on that, the Commissioner asserts that there is no merit to plaintiff's claim that the Law Judge did not properly consider her obesity in his RFC finding. (Dkt. No. 17, at 12.) He quotes a portion of the Law Judge's decision and argues that the Law Judge clearly took plaintiff's obesity into account, and he further asserts that plaintiff offered no record evidence to support her contention that her obesity produces work related limitations in addition to those found by the Law Judge. *Id.* Accordingly, the Commissioner believes that his final decision is in accordance with law and supported by substantial evidence and so should be affirmed.

Taking plaintiff's arguments in order, the undersigned first considers the Law Judge's decision to discount the opinion of Dr. Halapin, plaintiff's treating psychiatrist. (R. 24-25, 571.) The Law Judge found that Dr. Halapin's opinion was not supported by the longitudinal record, citing limited findings, routine and conservative treatment, terse treatment notes, inconsistency with the records of other treatment providers, and reliance on plaintiff's reported symptoms and limitations rather than objective findings and diagnostic test results. (R. 25.) There is substantial evidence in support of the Law Judge's decision.

It is true that Halapin is a treating source and saw plaintiff for more than two years. His opinion, ordinarily, should be given great weight and special consideration. *See* 20 C.F.R. § 404.1527(c) (2012). However, Halapin has provided little supporting evidence for his opinion. His treatment notes are very brief, often shorter than three lines long, and do little to describe plaintiff's condition or his own diagnostic techniques. (R. 306-319, 458-463, 564-568.) The record contains a single mental status examination at the beginning of treatment, and the findings

6

are unremarkable in all listed mental status categories. (R. 306.) The treatment he prescribed was conservative, consisting of minor adjustments in prescribed medications and monthly check ups.

Further, Halapin's notes show that plaintiff was responding well to treatment. In the months after plaintiff's first appointment, Halapin reported that she was significantly improved on medication, though she continued to struggle with life stressors, such as her children. (R. 308-319.) He noted that plaintiff was depressed around the time of her kidney surgery, but he later found that she had recovered. (R. 458-463, 564-568.) Moreover, in his most recent treatment notes, Halapin stated that she was not depressed. (R. 564.)

Plaintiff's assertion that the Law Judge substituted his own medical judgment for that of a medical professional in rejecting Dr. Halapin's opinion is not persuasive. The regulations require the Commissioner to consider whether a medical source opinion is consistent with the record and supported by its own findings and treatment notes. *See* 20 C.F.R. § 404.1527(c) (2012). Dr. Halapin's conservative treatment and descriptions of her improvement suggest that plaintiff's condition was not as severe as she contends. Further, Halapin's treatment notes establish little about plaintiff's condition or the clinical and laboratory techniques employed in assessing it. Accordingly, there is substantial evidence in support of the Law Judge's finding that Dr. Halapin's opinion was not supported by the longitudinal record.

Dr. Halapin's opinion is also inconsistent with the findings of the other treating sources. Plaintiff consistently was found to be alert and aware. (R. 326, 389, 404, 420, 444, 524.) Records from Elkton Family & Children's Medical Clinic, Balint Pain Management Center, and Martha Jefferson Hospital consistently showed plaintiff to have had normal orientation, memory, and mood. (R. 480-513, 555, 559.) While one examination by Charlottesville Family Medicine

7

did reveal mild impairments in plaintiff's attention, judgment and insight, and thought processes, it otherwise reported normal mood and mental ability. (R. 535.) These unremarkable findings conflict with Dr. Halapin's conclusion that plaintiff lacks mental functional ability in the majority of categories of work-related activities. (R. 571-574.) As the Commissioner has some latitude to resolve inconsistencies in the record, there is substantial evidence to support his decision to discount Dr. Halapin's opinion. *See Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996).

Plaintiff asserts that the Law Judge incorrectly evaluated her claim of fibromyalgia in his RFC finding. (Dkt. No. 11, at 11-12.) The Law Judge found that while plaintiff displayed some positive trigger points on examination, a sign of fibromyalgia, she also was found neurologically intact. (R. 24.) He also concluded that diagnostic testing failed to provide objective support for an impairment that reasonably would produce the extent or intensity of the claimant's expression of subjective pain. (R. 24-25.) Both these findings conflict with applicable regulatory and decisional authority. Whether a claimant is neurologically intact is not a diagnostic test element for fibromyalgia, and a claimant is not required to offer objective evidence of the intensity, severity, degree, or functional effect of his or her pain. *See Lawson v. Astrue*, 695 F.Supp.2d 729 (S.D.Ohio, 2010); *Proof of Chronic Fatigue Syndrome and Fibromyalgia*, 99 AM. JUR. 3d Proof of Facts § 1 (2011); *Hines v. Barnhart*, 453 F.3d 559, 564-565 (4th Cir. 2006).

Nevertheless, the Law Judge also considered other factors in determining the severity of her impairment, including the treatment plaintiff received for her diagnosed fibromyalgia, her physical abilities, and her subjective claims of pain. (R. 24-25.) The record supports the Law Judge's observation that plaintiff's credibility was significantly undermined by her inconsistent statements in the record. (R. 24.) For example, plaintiff testified that her weight loss over the

8

year before the hearing was not intentional (R. 53-54), yet the record shows that plaintiff told her doctors that she wanted to lose weight and was given medication to help her do so. (R. 486-491, 507.) Plaintiff testified that she swam three to four times during the summer before the hearing and walked less than a quarter of a mile once a week, and she claimed that she had never exercised more than that. (R. 61-62.) However, plaintiff's doctors encouraged her to exercise, and the records indicated she swam twice a week (R. 553), walked a mile daily (R. 466), and, generally, exercised frequently (R. 479). Moreover, plaintiff appears to have mischaracterized how frequently she used tobacco and alcohol.[3]

No treating source ever opined that plaintiff's fibromyalgia was severe enough to prevent her from working. Several of her treating sources opined that her fibromyalgia was stable and improving on medication. (R. 383, 413, 466-7, 471, 501.) On June 7, 2010, Laura Ricciardi, M.D., found that plaintiff was not tender at any of the points tested and had good relief with pain medication, leading her to conclude that plaintiff's fibromyalgia was a component of a somatization disorder. (R. 533-536.) In all, there is substantial evidence in support of the Law Judge's finding that plaintiff's subjective claims regarding the intensity, persistence, and severity of her impairment are not entirely credible, and that her physical impairments do not render her disabled.[4]

---

[3] Plaintiff testified that she smoked half a pack a day and never smoked more, and that she drank alcohol once or twice a month, with a period of heavier drinking in 2007. (R. 63-65.) However, the record reflects that plaintiff told several treating sources that she was smoking and drinking at a greater rate. (R. 389, 414, 419-420, 479.)

[4] Plaintiff also asserts that the Law Judge inappropriately exercised his own medical judgment in analyzing her treatment for fibromyalgia. (Dkt. No. 11, at 12.) The Law Judge opined that plaintiff's treatment was routine and conservative, pointing out that she was improving on medication. (R. 24.) Such improvement demonstrates plaintiff's condition is reversible and, therefore, is not disabling. Accordingly, the Law Judge committed no error in his analysis of plaintiff's treatment and its effects on her impairments.

9

Finally, plaintiff argues that the Law Judge failed to properly evaluate her obesity in determining her RFC, despite finding it to be a severe impairment. The Commissioner is required to consider a claimant's obesity in all steps of the sequential analysis. *See* SSR 02-1p, 67 Fed. Reg. 57,859-02 (Sept. 12, 2002). Here, the Law Judge found that plaintiff's obesity was a severe impairment and extensively discussed plaintiff's weight in his summary of the record, indicating that he considered plaintiff's obesity in determining plaintiff's RFC. (R. 16, 18, 19-24.) While, he did not specifically address whether plaintiff's obesity had cumulative effects on her other impairments or how that might affect his RFC finding, he did adopt the findings of the Agency's reviewing physicians, who considered the effect of plaintiff's obesity on her exertional limitations. (R. 90-97.) Further, plaintiff has failed to cite any evidence in the record that would suggest that her obesity has a cumulative effect on her other impairments that would result in work-related limitations beyond those found by the Law Judge. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-553 (3rd Cir. 2005).

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the

undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

4-26-2012
Date